IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **National Nail, Corp.**, *a Michigan corporation*, | § § § |
| Plaintiff, | § Civil Action No. 3:23-cv-02746 § |
| v. | § JURY TRIAL DEMANDED § |
| **PrimeSource Building Products, Inc.**, *a Delaware corporation*, | § § § |
| Defendant. | § § |

## COMPLAINT

Plaintiff National Nail, Corp. ("**National Nail**") states its claims of patent infringement against Defendant PrimeSource Building Products, Inc. ("**PrimeSource**") as follows:

### THE PARTIES

1. Plaintiff National Nail is a Michigan corporation with its principal place of business located at 2964 Clydon SW, Grand Rapids, Michigan 49519.

2. Defendant PrimeSource is a Delaware corporation with its principal place of business located at 1321 Greenway Drive, Irving, Texas 75038-2504.

### JURISDICTION AND VENUE

3. This is an action for patent infringement under the Patent Act, 35 U.S.C. § 271 *et seq*.

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the patent laws of the United States.

1

5. This Court has personal jurisdiction over PrimeSource. PrimeSource is registered as a corporation in Delaware, with its principle, regular and established place of business physically located within the Northern District of Texas. Specifically, PrimeSource's principal place of business is located at 1321 Greenway Drive, Irving, Texas 75038-2504.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and 1400(b) because PrimeSource has committed acts of patent infringement and has a regular and established place of business in the Northern District of Texas.

## BACKGROUND

7. National Nail has been a proud part of the American building materials industry for nearly 70 years as a manufacturer and distributor of high-quality, innovative product and service solutions for the residential, commercial, and industrial construction industries.

8. National Nail is also a brand builder, creating unique, patented product solutions, including fastening solutions for decking, synthetic roofing underlayment, and much more.

9. National Nail's high-quality brands include CAMO®, STINGER®, and PRO-FIT®.

10. National Nail has developed and patented many innovative fastening solutions under its CAMO® brand, including the fasteners themselves and the tools to deliver those fasteners. Those fasteners and tools include CAMO's hidden deck clips and CAMO drive tools, which are used to install grooved wood, composite, and PVC deck boards on joists.

11. The CAMO EdgeX® Clip is one such hidden deck clip, which is designed to efficiently and effectively be positioned to evenly space and fasten deck boards to deck joists for fast, clean, and sturdy construction, as shown below.



12.     Another example of an innovative patented hidden clip is the recently introduced next generation CAMO Wedge® Clip, which enables users to use CAMO drive tools to quickly fasten deck boards to joists.



13.     Defendant PrimeSource is a corporation that also distributes products to the construction industry, including construction fastening solutions and other specialty building products.

3

14.  PrimeSource manufactures, markets, and sells fastener products under the Grip-Rite® brand (amongst other brands), which includes the Grip-Rite® Ninja™ Hidden Deck Clip (the "**Infringing Product**"):



15.  The Grip-Rite® Ninja™ Hidden Deck Clip that PrimeSource distributes is advertised as a "New Product" on Grip-Rite's® website—despite the fact that it clearly infringes multiple claims in multiple National Nail patents.

16.  The following is a screenshot taken from the homepage of Grip-Rite's® website located at https://grip-rite.com:



17. To date, PrimeSource persists in its marketing, sale, and distribution of the Infringing Product. Accordingly, National Nail has filed this lawsuit to enforce its patent rights.

## THE PATENTS-IN-SUIT

18. On August 13, 2019, United States Patent No. 10,378,218 ("the **'218 Patent**"), entitled Hidden Fastener Unit and Related Method of Use and disclosing Roger A. Vandenberg as inventor, was issued. The '218 Patent was assigned to National Nail. A copy of the '218 Patent is attached as **Exhibit A**.

19. On December 12, 2023, United States Patent No. 11,840,848 ("the **'848 Patent**"), entitled Hidden Fastener Unit and Related Method of Use and disclosing Roger A. Vandenberg and Todd E. A. Schwartzkopf as inventors, was issued. The '848 Patent was assigned to National Nail. A copy of the '848 Patent is attached as **Exhibit B**.

20. National Nail is entitled to sue for past, present, and future infringement of each of the '218 Patent and the '848 Patent (collectively, the "**National Nail Patents**").

21. At all times relevant to this litigation, PrimeSource had notice of the National Nail Patents, including based on marking of National Nail's CAMO EdgeX® Clip at all relevant times.

22. PrimeSource, without authority, consent, or license from National Nail, has directly infringed and is still directly infringing the National Nail Patents by making, using, importing, selling, or offering to sell the Infringing Products, as well as indirectly infringing the National Nail Patents through inducing others to do the same.

23. PrimeSource will continue to infringe the National Nail Patents unless enjoined by this Court.

## COUNT I:  Infringement of the '218 Patent

24. National Nail incorporates by reference all preceding paragraphs.

25. The Infringing Products possess all of the limitations of at least representative claim 17 of the '218 Patent, which states as follows:

> 17. A fastener unit adapted to secure at least one board to a support, the fastener unit comprising:
>
> a spacer block defining a first fastener hole, the spacer block having a thickness extending from a front surface to a rear surface, the thickness corresponding to a gap between a first board and a second adjacent board, the spacer block including a vertical axis;
>
> a grip element extending from the spacer block, the grip element configured to fit in and engage a first groove defined by the first board, without the spacer block extending into the first groove, the grip element configured to receive a fastener through at least a portion of the grip element;
>
> wherein the spacer block includes a first resilient compression element extending from the spacer block, the first resilient compression element being vertically compressible toward a first plane that is transverse to the vertical axis, the first resilient compression element configured to compress and fit in, and forcibly expand within the first groove of the first board, thereby securing the spacer block in a position adjacent the first groove defined by the first board, with the spacer block being disposed in the gap between the first board and the second adjacent board.

26. Specifically, but without limitation, the Infringing Product is a "fastener unit adapted to secure at least one board to a support":



27. The Infringing Product further comprises "a spacer block defining a first fastener hole, the spacer block having a thickness extending from a front surface to a rear surface, the thickness corresponding to a gap between a first board and a second adjacent board, the spacer block including a vertical axis":



7



28. The Infringing Product further comprises "a grip element extending from the spacer block, the grip element configured to fit in and engage a first groove defined by the first board, without the spacer block extending into the first groove, the grip element configured to receive a fastener through at least a portion of the grip element":



8



29.     Further, the spacer block of the Infringing Product "includes a first resilient compression element extending from the spacer block, the first resilient compression element being vertically compressible toward a first plane that is transverse to the vertical axis, the first resilient compression element configured to compress and fit in, and forcibly expand within the first groove of the first board, thereby securing the spacer block in a position adjacent the first groove defined by the first board, with the spacer block being disposed in the gap between the first board and the second adjacent board":





30. PrimeSource, directly and through the actions of its employees, officers, directors, divisions, or subsidiaries, has infringed and continues to infringe the '218 Patent, including by making, using, offering for sale, selling, or importing the Infringing Products in violation of 35 U.S.C. § 271(a). Specifically, but without limitation, PrimeSource has offered for sale and sells the Infringing Products.

31. PrimeSource has also indirectly infringed on the '218 Patent by inducing infringement in violation of 35 U.S.C. § 271(b). Specifically, on information and belief, PrimeSource provides the Infringing Products to physical and online retailers in the United States, who, in turn, offer for sale and sell the Infringing Products to consumers, thus infringing at least claim 17 of the '218 Patent.

32. On information and belief, PrimeSource's infringement of the '218 Patent is and has been willful and deliberate, including without limitation based on the facts set forth in this Complaint.

33. As a result of PrimeSource's infringement of the '218 Patent, National Nail has been damaged in an amount not yet determined and will suffer additional irreparable damage unless this Court enjoins PrimeSource from further infringement.

### COUNT II: Infringement of the '848 Patent

34. National Nail incorporates by reference all preceding paragraphs.

35. The Infringing Products possess all of the limitations of at least representative claim 8 of the '848 Patent, which states as follows:

> 8. A fastener unit adapted to secure at least one board to a support, the fastener unit comprising:
>
> a spacer block including an upper portion and a lower portion, the spacer block having a thickness between a first surface and a second surface of the spacer block, the thickness configured to set a preselected gap between a first board and an adjacent second

11

board which the spacer block engages when installed, the spacer block defining a first fastener hole configured to receive a fastener therein, the spacer block defining a grip element recess extending through the thickness of the spacer block from the first surface to the second surface;

a first resilient element projecting away from a first surface of the spacer block, the first resilient element configured to engage a first groove of the first board;

a second resilient element projecting away from the first surface of the spacer block, the second resilient element configured to engage the first groove of the first board distal from the first resilient element within the first groove;

a grip element disposed between the first resilient element and the second resilient element and projecting away from the first surface of the spacer block, the grip element configured to engage the first groove of the first board, the grip element positioned in the grip element recess and extending through the thickness between the first surface and the second surface within the grip element recess, the grip element projecting away from the second surface of the spacer block on an opposite side of the thickness of the spacer block, the grip element defining a second fastener hole aligned with the first fastener hole configured to receive the fastener,

wherein the first resilient element and the second resilient element are bendable relative to a reference plane that is aligned with the grip element,

wherein the spacer block is securable adjacent the first groove to establish a gap between the first board and the adjacent second board.

36. Specifically, but without limitation, the Infringing Product is a "fastener unit adapted to secure at least one board to a support, the fastener unit comprising."



37. The Infringing Product further comprises "a spacer block including an upper portion and a lower portion, the spacer block having a thickness between a first surface and a second surface of the spacer block, the thickness configured to set a preselected gap between a first board and an adjacent second board which the spacer block engages when installed, the spacer block defining a first fastener hole configured to receive a fastener therein, the spacer block defining a grip element recess extending through the thickness of the spacer block from the first surface to the second surface":





38. The Infringing Product further comprises "a first resilient element projecting away from a first surface of the spacer block, the first resilient element configured to engage a first groove of the first board;":

14



39. The Infringing Product further contains "a second resilient element projecting away from the first surface of the spacer block, the second resilient element configured to engage the first groove of the first board distal from the first resilient element within the first groove":



15



40. The spacer block of the Infringing Product also includes "a grip element disposed between the first resilient element and the second resilient element and projecting away from the first surface of the spacer block, the grip element configured to engage the first groove of the first board, the grip element positioned in the grip element recess and extending through the thickness between the first surface and the second surface within the grip element recess, the grip element projecting away from the second surface of the spacer block on an opposite side of the thickness of the spacer block, the grip element defining a second fastener hole aligned with the first fastener hole configured to receive the fastener":



41. The first resilient element and the second resilient element of the Infringing Product "are bendable relative to a reference plane that is aligned with the grip element ":



17

42. The spacer block of the Infringing Product "is securable adjacent the first groove to establish a gap between the first board and the adjacent second board":



43. PrimeSource, directly and through the actions of its employees, officers, directors, divisions, or subsidiaries, has infringed and continues to infringe the '848 Patent, including by making, using, offering for sale, selling, or importing the Infringing Products in violation of 35 U.S.C. § 271(a). Specifically, but without limitation, PrimeSource has offered for sale the Infringing Products.

44. PrimeSource has also indirectly infringed on the '848 Patent by inducing infringement in violation of 35 U.S.C. § 271(b). Specifically, on information and belief, PrimeSource provides the Infringing Products to physical and online retailers in the United States, who, in turn, offer for sale and sell the Infringing Products to consumers, thus infringing at least claim 8 of the '848 Patent.

45. As a result of PrimeSource's infringement of the '848 Patent, National Nail has been damaged in an amount not yet determined and will suffer additional irreparable damage

unless this Court enjoins PrimeSource from further infringement.

## REQUEST FOR RELIEF

WHEREFORE, National Nail respectfully requests the following relief:

A. Judgment that PrimeSource infringed each asserted claim of the National Nail Patents;

B. Permanently enjoin PrimeSource, as well as its officers, agents, directors, employees, attorneys, and all persons acting in concert or participation with them, directly or indirectly, from further infringing the National Nail Patents;

C. Enter an order that PrimeSource remove all references and literature relating to the Grip-Rite® Ninja™ Hidden Deck Clip from primesourcebp.com, grip-rite.com and any other Internet sites over which PrimeSource has control;

D. Enter an order that PrimeSource cease and desist from manufacturing, importing, marketing, and selling the Grip-Rite® Ninja™ Hidden Deck Clip, and any other clips that infringe the National Nail patents;

E. Enter an order that PrimeSource destroy all existing inventory of the Grip-Rite® Ninja™ Hidden Deck Clip and any other clips that infringe the National Nail patents;

F. Award damages adequate to compensate National Nail for PrimeSource's infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

G. Enter an order trebling damages awarded to National Nail by reason of PrimeSource's willful infringement of the National Nail Patents as provided under 35 U.S.C. § 284;

H. Enter an order awarding National Nail interest on the damages awarded and its costs pursuant to 35 U.S.C. § 284;

I. Enter an order finding that this is an exceptional case and award National Nail its reasonable costs, expenses, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

J. Enter an order awarding National Nail pre-issuance damages, within the meaning of 35 U.S.C. § 154(d), to compensate National Nail for PrimeSource's infringement of the applications that matured into the National Nail Patents; and

K. Award such other relief as the Court may deem appropriate and just under the circumstances.

**JURY DEMAND**

National Nail demands a trial by jury.

Dated: December 12, 2023

Respectfully submitted,

/s/ Miranda Y. Jones
Miranda Y. Jones
  *Lead Counsel*
  State Bar No. 24065519
Jamie H. McDole
  State Bar No. 24082049
Phillip B. Philbin
  State Bar No. 15909020
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Tel.: 214.745.5400
Fax: 214.745.5390
Email: mjones@winstead.com
         jmcdole@winstead.com
         pphilbin@winstead.com

*Attorneys for Plaintiff* National Nail, Corp.